MR. JUSTICE SHEA,
dissenting:
I dissent. I would grant a new trial.
The trial court in effect granted a verbal motion in limine directing the State not to present evidence that defendant was on parole. Although the State agreed that it would caution each of its witnesses not to maintain that defendant *271 was on parole, the State deliberately chose not to talk to one of its witnesses before calling her to the witness stand. This witness therefore, was not warned that she must not mention that defendant was on parole. The witness twice (or three times) testified that the defendant was on parole. The admission of this evidence in violation of a court order excluding such evidence, is presumptively prejudicial. The State has failed to demonstrate that this prejudicial evidence did not affect the outcome of the trial and therefore I would grant a new trial.
It makes no difference whether the State deliberately elicited the forbidden testimony or inadvertently did so. The harm to the defendant is the same in either case. It can hardly be denied that evidence that a defendant has already been convicted of a felony is prejudicial to his trial. It was the State’s burden, once this inadmissible and prejudicial testimony was admitted, to prove a lack of reasonable possibility that the inadmissible evidence contributed to the conviction. Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. The State failed in this burden and this Court, therefore, has the duty of reversing the conviction and ordering a new trial.
If the State had tactical reasons for not talking to witness Léala Gray before she testified, the State nonetheless was not freed from its duty of warning this witness not to testify that defendant was on parole. The State still had a method by which this witness could be given the admonition. Just before the witness testified, the State could have asked for a court conference in chambers, and then the witness could have been called in to chambers, and, at the State’s request, the court could have warned the witness not to testify that defendant was on parole. But this was not done and the defendant should not have to bear the burden of the State’s omission by having to satisfy this Court that the prejudicial evidence was considered in the jury’s deliberations. Rather, it was the duty of the State to show that it was not considered.
*272 I further emphasize that the procedural context of the issue of defendant’s being on parole, does not lead me to the conclusion that the prosecutor’s conduct was as white as the driven snow. Defense counsel undoubtedly made the motion in limine because he knew that defendant’s status as a parolee was bound to be injected into the trial. He knew this because of the record of the first trial and of the investigation made before trial that indicated defendant’s parole status was discussed. Therefore, before trial he made the verbal motion in limine.
When witness Léala Gray in a nonresponsive answer to the State, first mentioned that defendant was on parole, defense counsel did not then move for a mistrial, undoubtedly because of the fear of further emphasizing the forbidden evidence. But later in the witnesses redirect examination, she again mentioned that defendant was on parole. Again, defense counsel did not immediately move for a mistrial. Instead, he waited until her examination had concluded and then he moved in chambers, for a mistrial because the forbidden evidence was placed before the jury. The trial court denied the motion but upon coming into the courtroom, gave the jury the cautionary admonition quoted by the majority. This cautionary instruction did not, however, cure the error, for the error was committed by the State. This error was presumptively prejudicial, and the State has not overcome this presumption of prejudice by a demonstration that the jury disregarded the fact that he was already a convicted felon.
When defense counsel made his verbal motion in limine to forbid the mentioning that defendant was on parole, the prosecutor expressed his displeasure, but nonetheless expressed that he would go along with the efforts to “sanitize” the trial just as the State had made efforts to sanitize” the first trial. It appears, however, that in bringing in forbidden evidence, the State was not quite as white as the driven snow.
The State knew that the witness most likely to bring in *273 defendant’s status as a parolee was Léala Gray, and she is the one witness who the State deliberately did not talk to before trial thereby avoiding warning the witness not to mention that defendant was on trial. Although the State asserts its noncomplicity in bringing forbidden evidence before the jury, the context of the questioning leads me to believe that the assertion of innocence cannot stand.
The first question asked by the prosecutor appears to be innocent enough, and Léala Gray’s answer also appears to be nonresponsive. Nonetheless, they told the jury defendant was on parole and the State could have prevented this from happening (or at least done its part in doing so) by moving in chambers to have the court warn her not to mention that defendant was on parole. But the State chose not to do so and therefore violated the order compelling the State to warn each of its witnesses.
Later, in the redirect examination of Léala Gray, the prosecutor again asked questions of Léala Gray that no longer smack of innocence. The prosecutor asked the witness a second time about witness Stephan Forsman’s fears that he would be in trouble.
“Q. And he [Steve Forsman] told them [the authorities] that he was afraid he was going to get in trouble? A. Uh-huh.
“Q. For what? A. Because he knew about the argument my dad had with C&M over the truck and he also knew that my dad was on parole.”
This second series of questions was asked after the witness had already, during the first series of questions, disclosed that defendant was on parole. By this time, the prosecutor was on notice that the witness was likely to again mention that defendant was on parole if the same kind of questions were directed to her. The prosecutor could only expect that the same kind of question asked a second time would again elicit the same response — that defendant was on parole. And it did. For these reasons, I cannot look at the prosecutor’s conduct as being as white as the driven snow.
*274 Here the jury had evidence before it that defendant had already been convicted of a felony, for his being on parole could lead only to that conclusion. It was axiomatic that admission of the defendant’s previous criminal record is prejudicial. See Rule 404(3)(b), Mont.R.Evid., and the comments to that rule. The prejudice to defendant is increased where the evidence is admitted without any legal basis to support its admission. And that is precisely the situation here. It makes little sense to then impose the burden on the defendant to prove that the inadmissible and prejudicial evidence adversely affected the outcome of his trial. But that is what the majority has done here. The majority punishes the wrong party for the infraction of the trial court’s order that certain evidence not be given to the jury. The majority has imposed an impossible burden on the defendant, a result hardly in accord with sound and fair rules of trial and appellate procedure.
I next attempt to cut through the fog of the majority holding that admission of defendant’s criminal record was harmless error. It is a difficult job because the fog is thick.
In reviewing defendant’s claim of error, the majority purports to be guided by Chapman v. California (1967), 386 U.S. 18, 87 S.Ct. 824, 77 L.Ed.2d 705, in stating the “test of prejudicial error” The majority states that the test is “whether there is a reasonable possibility the inadmissible evidence might have contributed to the conviction.” (Emphasis added.) And yet the majority did not analyze the evidence in light of this test to determine whether the admitted inadmissible and prejudicial evidence might have infected the jury’s verdict. Instead, the majority seeks several reasons to justify its decision not to reverse.
First, the majority relies on the decision of the trial court refusing to grant a new trial. It is common, of course, for trial courts to refuse motions for new trials. And, once the trial court decided not to grant the motion he had to conclude that the inadmissible and prejudicial evidence had minimal impact on the jury. He couldn’t very well say the *275 evidence had a great impact on the jury and still refuse to grant the motion for mistrial. I doubt furthermore, that the trial court’s observations in this situation should be given much weight. The jury did not have to drop its teeth before the trial court concluded the evidence would adversely affect their deliberations.
Second, the majority uses the standard ruling where a conviction is to be affirmed — the cautionary instruction given by the trial court cured all. Yet we all know that once the knife is plunged in, a cautionary instruction does not cure all. The point is that the State, through questioning its witness put the evidence before the jury that the defendant was already a convicted felon. A cautionary instruction could not withdraw that information from the jury’s mind.
Third, the majority engages in a remarkable reversal of roles when it holds that even though the evidence was prejudicial, the duty is nonetheless imposed on the defendant to show that the offending evidence contributed to his conviction. The only way he could do this in a normal case would be to produce jury affidavits, and this is normally an impermissible method of demonstrating prejudice. Moreover, once the jury convicted, jurors would be reluctant to admit that the inadmissible evidence played a part in their decision to convict.
Fourth, the majority concludes that Léala Gray was a hostile witness because she would have no motive to secure her stepfather’s conviction. The fact is, however, that she and her boyfriend Stephen Forsman testified at the first trial, and neither of them were called as hostile witnesses by the State in the second trial. The implication is that Léala Gray purposely sought to produce a mistrial by testifying that her stepfather-defendant was on parole. But the evidence does not support that conclusion. A fair reading of the trial transcript indicates that the State was more than happy to get before the jury the fact that defendant was already a convicted felon. If the State did not want this information before the jury, it certainly did nothing to prevent it, and *276 therein lies the evil of the majority holding. The State is given the benefit of its deliberate choice not to warn Léala Gray that she must not testify that defendant was on parole. This choice flew in the face of the trial court’s order.
Fifth and finally we get to the catch-all, the apparent real justification for upholding the conviction. Apparently with Chapman v. California, supra, in mind, the majority declares: “The evidence supporting defendant’s conviction was substantial, if not overwhelming.” If the evidence of defendant’s guilt was overwhelming, it was the duty of the majority to set forth all of that evidence to describe its overwhelming character. On the other hand, if the evidence of defendant’s guilt was only “substantial”, then the conviction cannot be affirmed by an application of the harmless error rule. Substantial evidence is required to affirm any criminal conviction challenged for legal sufficiency of the evidence, and substantial evidence is not enough to avoid a reversal based on application of the test set forth in Chapman v. California.
I would vacate the judgment and order a new trial.
MR. JUSTICE MORRISON concurs.